UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

AEROTEK, INC. & TEKSYSTEMS, INC.                    CIVIL ACTION

VERSUS                                             NO. 08-4638 C/W
                                                   09-6998

REVENUE CYCLE MANAGEMENT, INC., ET AL.             SECTION "A"(1)


## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter was submitted for trial on the briefs on December 16, 2011.  Having now considered the pleadings, evidence offered at trial, arguments of counsel, and applicable law, the Court issues its Finding of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a).  To the extent certain findings of fact are more appropriately classified as conclusions of law, they should be so construed.  To the extent certain conclusions of law are more appropriately classified as findings of fact, they should be so construed.

## I.    FINDINGS OF FACT

Plaintiffs Aerotek, Inc. and TEKsystems, Inc. are separate corporate entities, both of which are part of the Allegis Group. Aerotek and TEKsystems provide staffing services to business clients around the country.  The services provided by Aerotek and TEKsystems sometimes go unpaid, requiring Aerotek and TEK systems to use a third-party collection agency to recover funds owed by

1

customers.

Defendant Revenue Cycle Management, Inc. ("RCM") operated as a collection company within Louisiana, accepting collections from all over the United States.  Aerotek and TEKsystems hired RCM to pursue collection efforts on their behalf sometime in 2005. Defendant John Gutierrez incorporated RCM in Louisiana in 2002 and former defendant John Anderson became a co-owner and vice-president of the corporation in 2003.  Gutierrez and Anderson were the two owners of RCM between 2003 and the time that it closed in October or November 2008.  Gutierrez was the director of RCM during the entire time that RCM was in business.

Gutierrez ran the company day-to-day from its inception in 2002 until about mid-2005 when Hurricane Katrina struck.  When business conditions were favorable RCM had as many as 20 employees and operated the business at a profit.  At its peak RCM had in excess of 3500 clients.  Customers received their remittances from collected debts in accordance with their contracts.

Plaintiffs' relationship with RCM was contractual in nature. (08-4638; FAC ¶ 21).  When Plaintiffs were owed money by a customer they typically sent a collection amount to RCM, and would provide the name of the debtor, the debtor's account number, the amount to be recovered, and the date assigned.  (08-4638;FAC ¶ 19).  If RCM agreed to pursue the collection account

2

on behalf of Plaintiffs, then RCM would send an acknowledgment letter accepting the collection account, outlining its 15 percent contingency fee, and detailing the terms and conditions under which RCM agreed to accept the collection account. (08-4638; FAC ¶ 20). Examples of the acknowledgment letters are located at Exhibit 1 to the complaint (09-6998) and Plaintiffs' trial exhibit H-3. If RCM was able to successfully collect from the debtor then it deducted its 15 percent collection fee from the money collected and remitted the remaining funds to either Aerotek or TEKsystems.[1] (08-4638; FAC ¶ 23).

At some point in time a representative of TEKsystems contacted RCM's Kitty Mayo with questions about remittances. Kitty Mayo served as the sales manager for RCM. Mayo joined the company in August or September of 2004. (Mayo depo. at 9). Mayo had worked in the collections industry since 1996 and Aerotek and TEKsystems had been her customers for years. Mayo brought Aerotek's and TEKsystems' collections business to RCM when she joined the company. When Mayo attempted to follow-up on

---

[1] Plaintiffs posit that they were set up as "gross" clients with RCM such that when RCM received payment from a debtor, RCM would send a remittance check to Plaintiffs for 100 percent of the amount received and then submit a bill to Plaintiffs for RCM's commission, and this appears in the Pre-trial Order (Rec. Doc. 217) as an Uncontested Material Fact. But the deposition testimony submitted overwhelmingly establishes that the normal course of conduct between the parties was for RCM to deduct its 15 percent fee and then remit the balance to Plaintiffs. Nothing in the documentary evidence suggests that RCM was contractually obligated to treat Plaintiffs as "gross" clients.

TEKsystems' inquiries about remittances she received little assistance from other RCM staff, including Gutierrez.  Mayo began to suspect that TEKsystems was not getting paid the remittances that it was due and she contacted Aerotek to see if the same problems were occurring.

Plaintiffs eventually contacted Gutierrez directly to find out what had happened to the remittances that they believed they were owed.  In August 2008 Gutierrez participated in a conference call with representatives of the plaintiff companies.  Plaintiffs contend that Gutierrez denied that they were due any money and/or claimed ignorance as to anything improper and stated that he would have to investigate the matter to see if there was any validity to Plaintiffs' contentions.  On August 25, 2008, Plaintiffs sent a letter to Gutierrez complaining that he had subsequently been unwilling to speak with them via phone and that they had received no assurances that RCM would be remitting the money that Plaintiffs believed that they were owed.  (Pla. Exh. H-12).  Plaintiffs terminated their business relationship with RCM via that letter and indicated that they intended to conduct an onsite audit within five days.  On August 28, 2008, Gutierrez responded via fax that RCM was in the process of trying to audit its records and that because Plaintiffs' inquiry involved files dating back to 2004, it would be necessary to pull hard copies from a warehouse.  (Pla. Exh. H-13).  In closing, Gutierrez

4

suggested that RCM postpone its plans for an onsite audit because RCM was in the process of preparing for an approaching hurricane. Gutierrez stated that RCM would be in touch the following week.

Gutierrez did not follow up with Plaintiffs the following week.  Gutierrez consulted with an attorney immediately after the August 2008 teleconference and was advised to have no more contact with Plaintiffs as he was likely to be sued.  (Def. Exh. 3).

Aerotek and TEKsystems filed Civil Action 08-4638 on October 10, 2008, against multiple defendants including John Gutierrez. Via Civil Action 08-4638 Aerotek seeks to recover $366,946.22 in unremitted funds and TEKsystems seeks to recover $80,377.13 in unremitted funds.  Plaintiffs seek to recover the unremitted funds under theories of breach of contract, fraud, embezzlement, conspiracy, conversion, breach of fiduciary duty, negligence, and unjust enrichment.  (FAC, Rec. Doc. 14).  On October 14, 2009, the Court held an evidentiary hearing and entered a default judgment in favor of Plaintiffs and against defendant RCM.  (Rec. Docs. 70, 71).  A default judgment was later entered against defendants Anderson & Gutierrez Development, LLC, Direct Mortgage Funding, LLC, and John Anderson.  (Rec. Docs. 108, 168). Plaintiffs voluntarily dismissed other defendants in the case. (Rec. Docs. 152, 172, & 173).  John Gutierrez is now the sole remaining defendant.  Plaintiffs seek to recover the unremitted

funds from him personally relying on theories of fraud, breach of fiduciary duty, embezzlement, and conversion.

In response to this lawsuit and other financial concerns defendant Gutierrez filed for Chapter 7 bankruptcy protection (Bankruptcy Case No. 09-12211), which would serve to discharge any indebtedness that he might owe to Plaintiffs. Plaintiffs responded by filing an adversary proceeding in Gutierrez's bankruptcy, seeking to except certain claims against Gutierrez from discharge under 11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6). (Adv. Pro. No. 09-1131). Plaintiffs moved to withdraw the automatic reference to the bankruptcy court and Judge McNamara granted their motion on October 23, 2009. (CA09-6998, Rec. Doc. 2). The adversary claims for exception to discharge were assigned Civil Action number 09-6998 and the matter was transferred to this Section for consolidation with the claims for affirmative relief asserted in Civil Action 08-4638.

During the course of the litigation Plaintiffs moved the Court to draw an adverse inference related to Gutierrez's failure to retain documents and refusal to testify regarding relevant matters. (Rec. Doc. 199). On May 17, 2011, the Court advised the parties that the motion would be carried with the merits. (Rec. Doc. 203).

Aerotek, TEKsystems, and Gutierrez elected to waive any right to a jury trial and to proceed before the bench. (Rec.

Doc. 174).  At a status conference held on September 29, 2011,
the parties further agreed that the claims at issue would be
suitable for a trial on the briefs in lieu of a live bench trial.
(Rec. Doc. 235).  The Court issued a briefing schedule and the
matter was submitted for a final decision on the briefs on
December 16, 2011.  (Rec. Doc. 235).

## II.  CONCLUSIONS OF LAW

These consolidated cases present separate legal but
factually overlapping issues.  Via the claims presented in Civil
Action 08-4638, Plaintiffs seek affirmative recovery from
Gutierrez, in his personal capacity, for the amounts that they
believe that RCM failed to remit to them.  These claims are
grounded solely on state law and the Court has diversity
jurisdiction over these claims pursuant to 28 U.S.C. §
1332(a)(1).

Plaintiffs' claims in Civil Action 09-6998, on the other
hand, are based solely on federal bankruptcy law and they do not
provide a cause of action for affirmative recovery as do the
state law claims.  These claims are non-dischargeability claims
which Plaintiffs must prove in order to avoid having any judgment
obtained against Gutierrez in 08-4638 extinguished by his
personal bankruptcy.  Hence, the claims in 09-6998 become
pertinent if and only if Plaintiffs prevail on their state law

claims in 08-4638.[2]  The claims asserted in 09-6998 constitute
core proceedings under federal bankruptcy law, 28 U.S.C. §
157(b)(2)(I), and the Court has jurisdiction over these claims
pursuant to 28 U.S.C. § 1334.

**A.   Civil Action 08-4638**

*1.   Fraud*

It is well-settled that a corporation is a distinct legal
entity with the legal fiction of corporateness shielding its
officers from liability for the corporation's debts.  Dishon v.
Ponthie, 918 So. 2d 1132, 1134 (La. App. 3d Cir. 2006).  The
liability of corporate officers and directors to third parties is
generally determined under the laws of agency or mandate.  Dutton
& Vaughan, Inc. v. Spurney, 600 So. 2d 693, 697 (La. App. 4th
Cir. 1992) (citing L.L. Ridgway Co. v. Marks, 146 So. 2d 61 (La.

---

[2] The validity of a creditor's claim is determined by rules
of state law.  Grogan v. Garner, 498 U.S. 279, 283-84 (1991)
(citing Vanston Bondholders Protective Comm. v. Green, 329 U.S.
156, 161 (1946)).  Establishment of a debt under state law is a
proceeding separate and distinct from determining the
dischargeability of a debt.  In re Holdaway, 388 B.R. 767, 782
(Bankr. S.D. Tex. 2008).  In other words, there is no debt to
discharge if the plaintiff cannot establish liability against the
debtor.  In re Ritz, 459 B.R. 623, 626 (Bankr. S.D. Tex. 2011).
Plaintiffs seem to meld the issues of debt from 08-4638 and
dischargeability from 09-6998, for instance proceeding as if
their fraud and conversion claims are governed by federal law.
But the issues of debt and dischargeability are distinct and
federal law does not govern the question of whether Gutierrez can
be held personally liable for the debts of the corporation.  The
administrative docket management tool of consolidation does not
alter the analysis.  In re Excel, 106 F.3d 1197, 1201 (5th Cir.
1997) (recognizing that consolidation does not merge suits into a
single cause).

App. 4th Cir. 1962)).  Thus, unless the officers and directors
purport to bind themselves individually, they do not incur
personal liability for the debts of the corporation.  Id.
Louisiana courts are very hesitant to hold an officer or director
personally liable for corporate obligations.  Lone Star Indus.,
Inc. v. Am. Chem., Inc., 461 So. 2d 1063, 1067 (La. App. 4th Cir.
1984).  This is especially true when the parties contract with
each other as corporations.  Id.

     Under Louisiana law the corporate "veil" may be pierced
under the "alter ego" doctrine where the corporate entity is
disregarded to such an extent that the affairs of the corporation
are indistinguishable from the affairs of the officer or
director.  Tubos de Acero de Mex. v. Am. Intern. Invest. Corp.,
292 F.3d 471, 478 (5th Cir 2002) (citing First Downtown Dev. v.
Cimochowski, 613 So. 2d 671, 676 (La. App. 2d Cir. 1993)).
Another basis for piercing the corporate veil is statutorily
recognized and it applies where an officer or director, acting
through the corporation, defrauds or deceives a third party.  La.
R.S. § 12:95.[3]  An action seeking to hold a corporate officer or

------

[3] Section 95, entitled Actions for Fraud, reads as follows:

> Nothing in this Chapter shall be construed as
> in derogation of any rights which any person
> may by law have against a promoter,
> subscriber, shareholder, director or officer,
> or the corporation, because of any fraud
> practiced upon him by any of such persons or
> the corporation, or in derogation of any right

director personally liable for fraud, is separate from and does not require disregard of the corporate entity under the alter ego doctrine.[4] <u>Tubos de Acero</u>, 292 F.3d at 479; <u>Lone Star Indus.</u>, 461 So. 2d at 1067.

Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. La. Civ. Code art. 1953 (West 2008). The two elements essential to establishing fraud are the intent to defraud or to gain an unfair advantage and resulting loss or damage. <u>Tubos de Acero</u>, 292 F.3d at 479 (<u>citing</u> <u>First Downtown</u>, 613 So. 2d at 677); <u>Dutton & Vaughan</u>, 600 So. 2d at 698 (<u>citing</u> <u>Hall v. Ark.-La. Gas Co.</u>, 368 So. 2d 984 (La. 1979)). However, fraud cannot be predicated on unfulfilled promises or statements as to future events. <u>Dutton & Vaughan</u>, 600 So. 2d at 698 (<u>citing</u> <u>Wright Bros. Corp. v. Colomb</u>, 517 So. 2d 1194 (La. App. 4th Cir. 1987)). Under Louisiana law, an action for fraud cannot be based simply upon promissory statements relating to future actions, and a mere failure to perform a promise or an

─────────────────

        which the corporation may have because of any
        fraud practiced upon it by any of these
        persons.

La. Rev. Stat. Ann. § 12:95 (West 2010).

   [4] Plaintiffs herein are not relying upon the alter ego method for piercing the corporate veil. They rely only upon the fraud method.

10

agreement to do something at a future time, without more, is not evidence of fraud.  Wright Bros., 517 So. 2d at 1197.

Gutierrez does not dispute that RCM failed to remit to Plaintiffs all of the sums that were collected on their behalf. Gutierrez does not, however, agree with the amounts that Plaintiffs claim they are owed.

Plaintiffs have failed to produce sufficient proof of fraud by Gutierrez so as to pierce the corporate veil and hold him personally liable for the unremitted funds.  Failure to remit funds does not necessarily entail fraud.  Plaintiffs had no dealings with Gutierrez until August 2008, which was after they discovered the missing remittances, and they terminated their relationship with RCM almost immediately after having contact with Gutierrez.  Nothing that Gutierrez stated or suppressed in August of 2008 caused any of the damages that Plaintiffs allege going back to 2005.

Mayo contends that Gutierrez assured her that her clients would get paid and it was for this reason that she continued to take their business.  (Def. Exh. O, Mayo decl. ¶ 10).  Plaintiffs do not indicate when Gutierrez made this representation to Mayo but the Court assumes that it occurred later in 2008 when Plaintiffs started questioning Mayo about unremitted funds and she attempted to discuss the matter with Gutierrez.  This statement to Mayo is insufficient to support a finding that

Gutierrez defrauded Plaintiffs out of collected funds.

Allegations of fraud with respect to Gutierrez's dealings with a Slidell woman are irrelevant to the fraud claims that Plaintiffs are trying to prove in this case. Further, internet postings, news articles, and reports about the Slidell incident and other infractions intended to disparage Gutierrez's character, (Pla. Exh. H-2), constitute inadmissible hearsay.

In <u>Tubos de Acero</u>, <u>supra</u>, the Fifth Circuit suggested that it would be inconsistent to deny a motion for summary judgment filed by a corporation accused of fraud and conversion while granting summary judgment for the corporate officer allegedly involved. 292 F.3d at 479-80. In the instant case the Court has already entered a judgment against RCM, Inc. But that judgment was the product of default proceedings in which Plaintiffs' evidence went unchallenged and in which Gutierrez's personal conduct was not at issue.

Gutierrez cannot be held personally liable for the funds that RCM did not remit based on the allegation that he committed fraud.

### 2. *Conversion*

Even absent intent to defraud, Louisiana law provides that a corporate officer may be held personally liable for damages resulting from his acts of conversion committed on behalf of the corporation. <u>Tubos de Acero</u>, 292 F.3d at 479; <u>United States v.</u>

<u>Hibernia Nat'l Bank</u>, 882 F. 2d 961, 964 (5th Cir. 1989).  The
tort of conversion is an intentional act done in derogation of
the plaintiff's possessory rights.  <u>Kinchen v. Louie Dabdoub Sell
Cars, Inc.</u>, 912 So. 2d 715, 718 (La. App. 5th Cir. 2005) (<u>citing
Bruschweiler (Antiques) Ltd. v. GBA Great British Antiques, LLC</u>,
860 So. 2d 644, 649 (La. App. 5th Cir. 2003)).  It is committed
when one wrongfully does any act of dominion over the property of
another in denial of or inconsistent with the owner's rights.
<u>Id.</u>  Any wrongful exercise or assumption of authority over
another's goods, depriving him of the possession, permanently or
for an indefinite time, is a conversion.  <u>Id.</u>  Although a party
may have rightfully come into possession of another's goods, the
subsequent refusal to surrender the goods to one who is entitled
to them may constitute conversion.  <u>Id.</u>

The intent required for conversion is not conscious
wrongdoing but rather an intent to exercise dominion or control
over the goods that is inconsistent with another's rights.  <u>Tubos
de Acero</u>, 292 F. 3d at 479 (<u>citing</u> <u>La. State Bar Ass'n v.
Hinrichs</u>, 486 So. 2d 116, 121 (La. 1986)).  A mistake of law or
fact is not a defense.  <u>Id.</u>  It is of no moment "what subsequent
application was made of the converted property, or that defendant
derived no benefit from his act."  <u>Id.</u> (<u>quoting</u> <u>Quealy v. Paine,
Weber, Jackson & Curtis, Inc.</u>, 475 So. 2d 756, 760 (La. 1985)).
Personal liability for a corporate officer can attach based on

his participation in the corporation's act of conversion.  <u>Tubos de Acero</u>, 292 F.3d at 479.  The officer need not have gained any personal benefit from the conversion in order to be liable.  <u>Id.</u> (<u>citing</u> <u>United States v. Hibernia Nat'l Bank</u>, 882 F.2d 961, 964 (5th Cir. 1989)).

It is undisputed that RCM collected some amounts that were not remitted to Plaintiffs.  Given that RCM had Plaintiffs' funds in its possession at one time, yet can no longer produce those funds to pay what is owed, it is more probable than not that a conversion occurred somewhere along the line.  The Court reaches this conclusion because RCM's failure to remit funds to Plaintiffs was not a one time occurrence so an occasional inadvertent failure to mail a check or a mailed check having been lost in the mail cannot account for all of the unremitted funds. Further, because the funds are no longer available, RCM must have exercised "dominion or control" over Plaintiffs' property, and the intent to commit wrongdoing is not an element of conversion.

But even if it is more probable than not that RCM converted Plaintiffs' property, this lawsuit is only concerned with whether Plaintiffs can prove that Gutierrez converted their money, and if he did the quantum involved.  The record contains no direct proof that Gutierrez participated in any acts of conversion.  As an officer of the company, Gutierrez cannot be held vicariously liable for acts of conversion that he did not commit or

14

participate in.  And even if Gutierrez participated from time to
time in acts of conversion, which again need not amount to theft,
the only acts pertinent to this lawsuit are acts committed
specifically against Plaintiffs' funds.  In Louisiana, the tort
of conversion is based on principles of fault as opposed to
strict liability.  <u>Dual Drilling Co. v. Mills Equip. Invests.,
Inc.</u>, 721 So. 2d 853, 857 N.3 (La. 1998).  But the trust fund
checking account that held collection deposits was not dedicated
to Plaintiffs' funds.  In other words, the account also contained
money that did not belong to Plaintiffs.  So even if Plaintiffs'
evidence could establish that Gutierrez converted client money on
certain occasions, Plaintiffs cannot establish that any specific
acts of conversion that might implicate Gutierrez involved their
money.

No witness, including Kitty Mayo, could testify as to any
specific mishandling of funds or wrongdoing by Gutierrez.  Mayo's
testimony with respect to Gutierrez's involvement in any type of
conversion was highly speculative.  In fact, it was Mayo's
interactions with John Anderson and statements that he made to
her that caused Mayo to surmise that RCM clients' money was being
used by other business entities involving Anderson and Gutierrez.
Mayo's chief complaint with respect to Gutierrez is that he put
her off when she tried to approach him about her concerns.

It is undisputed that during the pertinent time frame

15

Gutierrez had for the most part left the day to day operations of RCM in the hands of Anderson, who was Chief Operating Officer. Gutierrez was rarely in the office.  Anderson had check signing authority.  Anderson simply quit coming to the office about two months before RCM ceased operations.

Significant sums of money were transferred from RCM's trust account, which was used for collections deposits, to RCM's operating account.  Gutierrez was the signatory on at least 90 percent of the checks written from RCM's trust account between January 1, 2005, and August 31, 2007.  But most checks and transfers were processed electronically and did not require an actual hand-signature by Gutierrez.  An electronic stamp with Gutierrez's signature was used for signing non-paper checks.

Plaintiffs' most damning evidence against Gutierrez is that transfers were made to Direct Mortgage Funding, one of Gutierrez's other businesses that did not involve John Anderson, and to Gutierrez personally from RCM's operating account.  Using funds from the operating account is not per se problematic but the operating account was of course funded by transfers from the trust account that contained collection deposits.  Even if this establishes an act of conversion with respect to somebody's property, it does not establish that it was Plaintiffs' property that was converted in any given instance.

Gutierrez did not waive his rights under the Fifth Amendment

16

by answering the lawsuit.  Moreover, the Court will not utilize
an adverse inference to "punish" Gutierrez for following the
advice of his attorney and validly exercising his right against
self-incrimination.

Clearly, with the nature of the claims being asserted
credibility was of paramount importance.  Plaintiffs elected to
waive their right to have Gutierrez testify live before the Court
and instead relied upon a video deposition.  The Court has
reviewed the video deposition in conjunction with this decision
but found the deposition transcript far more useful.  The video
deposition does not give the Court an adequate basis to discredit
Gutierrez's testimony.

Plaintiffs have failed to produce sufficient proof that
Gutierrez participated in acts of conversion so as to pierce the
corporate veil and hold him personally liable for the unremitted
funds.[5]

### 3.  *Embezzlement*

Louisiana law does not recognize a separate cause of action
for the intentional tort of "embezzlement."  Any recovery for

---

[5] In a case that is remarkably similar to this one, an
Illinois district court held that a client had no claim for
conversion against the director of a collection agency when he
used client funds for his own benefit.  Cumis Ins. Soc., Inc. v.
Peters, 983 F. Supp. 787 (N.D. Ill. 1997).  That holding,
however, was based on a principle of Illinois law that precludes
a conversion claim premised on money contained in an unsegregated
account.

acts of embezzlement would be covered either by the fraud claim or the conversion claim.

### 4.   *Breach of Fiduciary Duty*

Plaintiffs cannot recover against Gutierrez under the theory that he breached a fiduciary duty to them.  Under Louisiana law, corporate officers and directors owe a fiduciary duty to the corporation and its shareholders but they owe no such duty to persons or entities that contract with the corporation.  Dutton & Vaughan, Inc. v. Spurney, 600 So. 2d 693, 697 (La. App. 4th Cir. 1992) (citing Tahoe Corp. v. P&G Gathering Sys., Inc., 506 So. 2d 1336 (La. App. 2d Cir. 1987)).

Virdanco, Inc. v. MTS International, 820 P.2d 352 (Colo. Ct. App. 1991), which Plaintiffs cite, is not relevant to Plaintiffs' claims against Gutierrez for breach of fiduciary duty.  Virdanco is based on Colorado law.

### 5.   *Other Causes of Action*

Plaintiffs have alleged other causes of action such as negligence and unjust enrichment.  A debt premised on any of these theories would be discharged by Gutierrez's bankruptcy.

In sum, Plaintiffs have not established the existence of a debt under state law.

### B.   Civil Action 09-6998

Because the evidence does not establish a debt owed by Gutierrez to Plaintiffs under state law, the issue of discharge

18

is moot.  Out of an abundance of caution the Court will
nonetheless address the discharge claims.

Plaintiffs seek to except the debt from discharge pursuant
to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6).  A discharge
under the bankruptcy code does not discharge an individual debtor
from any debt--for money to the extent obtained by false
pretenses, a false representation, or actual fraud, other than a
statement respecting the debtor's or an insider's financial
condition (11 U.S.C. § 523(a)(2)(A)); for fraud or defalcation
while acting in a fiduciary capacity, embezzlement, or larceny
(11 U.S.C. § (a)(4)); for willful and malicious injury by the
debtor to another entity or to the property of another entity (11
U.S.C. § 523(a)(6)).

Plaintiffs have the burden of proving by a preponderance of
the evidence that one of the discharge exceptions applies to
Gutierrez's debt.  See Grogan, 498 U.S. at 287-88; Holdaway, 388
B.R. at 779.

### 11 U.S.C. § 523(a)(2)(A):  Fraud

Under 11 U.S.C. § 523(a)(2)(A) a debt is not dischargeable
if obtained via by false pretenses, a false representation, or
actual fraud.  In order for false pretenses or false
representations to apply, the debtor must have made a knowing
falsehood upon which the damaged party relied.  Recover Edge, LP
v. Pentecost, 44 F.3d 1284, 1292-93 (5th Cir. 1995) (quoting

19

<u>Allison v. Roberts</u>, 960 F.2d 481, 483 (5th Cir. 1992)).

As previously explained, Plaintiffs have not established that any false representations by Gutierrez caused them damage.

Non-dischargeability under an actual fraud theory also requires proof of representations by the debtor that damage the creditor. <u>Id.</u> (<u>quoting</u> <u>In re Roeder</u>, 61 B.R. 179,181 (Bankr. W.D. Ky. 1986)). At no time did Gutierrez make representations that damaged Plaintiffs.

Plaintiffs cannot prevail on their discharge claim on the theory that Gutierrez defrauded them.

### 11 U.S.C. § (a)(4): Breach of Fiduciary Duty; Embezzlement or Larceny

Under 11 U.S.C. § 523(a)(4) a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, may not be discharged in bankruptcy. While all aspects of this exception involve debts arising from the debtors acquisition or use of property that is not his, it is intended to reach those debts incurred through abuses of fiduciary positions and criminal acts. <u>In re Miller</u>, 156 F.3d 598, 602 (5th Cir. 1998) (<u>quoting</u> <u>In re Boyle</u>, 819 F.2d 583, 588 (5th Cir. 1987)).

The definition of "fiduciary" for purposes of this exception is controlled by federal common law rather than state law. <u>Id.</u> But the federal common law definition is not broad in scope and it is narrower than it is under general common law. <u>Id.</u> Under §

20

523(a)(4), "fiduciary" is limited to instances involving express
or technical trusts.   Id.

This case does not involve an express or technical trust.
Courts in this circuit recognize that corporate officers
generally do not owe a fiduciary duty to creditors of the
corporation.   In re Ritz, 459 B.R. 623, 633 (Bankr. S.D. Tex.
2011) (citing Conway v. Bonner, 100 F.2d 786, 787 (5th Cir.
1939); see also Floyd v. Hefner, No. 03-5693, 2006 WL 2844245
(S.D. Tex. Sept. 29, 2006).

Even though federal law ultimately governs the question of
fiduciary status, courts should also consult state law when
determining whether a debt was incurred while acting in a
fiduciary capacity.   In re Jones, 445 B.R. 677, 707 (N.D. Tex.
2011) (citing LSP Inv. Partner. v. Bennet, 989 F.2d 779, 789 (5th
Cir. 1993)).   As previously explained, under Louisiana law
Gutierrez did not owe a fiduciary duty to Plaintiffs as parties
who contracted with RCM.

Plaintiffs cannot prevail on their discharge claim on the
theory that Gutierrez was acting in a fiduciary capacity.

The term larceny is interpreted under federal common law
rather than state law definitions of larceny.   Jones, 445 B.R. at
706 n.106 (citing In re Barrett, 156 B.R. 529, 533 n.3 (Bankr.
N.D. Tex. 1993)).   Under federal common law, larceny has been
defined as "the felonious taking of another's personal property

with intent to convert it or deprive the owner of it.  Id.  The larceny exception to discharge does not apply when the property comes into the debtor's possession lawfully.  Miller, 156 F.3d at 602.

The larceny exception does not apply under the facts of this case because even if Plaintiffs could establish that Gutierrez converted funds that were due Plaintiffs, those funds were not obtained unlawfully.

For purposes of § 523(a)(4) embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." Miller, 156 F.3d at 602 (quoting In re Thurston, 18 B.R. 545, 550 (Bankr. M.D. Ga. 1982)).  Because the discharge exceptions are to be narrowly construed in favor of the debtor, a creditor seeking to prevent discharge based on the embezzlement exception must present proof of the debtor's fraudulent intent in taking the property.  Id. (citing Brady v. McAllister, 101 F.3d 1165, 1173 (6th Cir. 1996)).  Fraudulent intent is "an intent to deceive another person and thereby induce such other person to transfer, alter or terminate a right with respect to property. Holdaway, 388 B.R. at 778 (quoting First Nat'l Bank v. Harrell, 94 B.R. 86, 91 (Bankr. W.D. Tex. 1988)).  Fraudulent intent may be inferred from the conduct of the debtor and from the circumstances of the situation.  Id.  The elements to be proven

22

to make out a case of embezzlement are 1) appropriation of funds by the debtor, 2) for the debtor's use or benefit, and 3) with fraudulent intent.  <u>In re Patton</u>, 129 B.R. 113, 116 (Bankr. W.D. Tex. 1991).

The evidence does not support the finding that Gutierrez appropriated Plaintiffs' property with "fraudulent intent" as this element is defined in this circuit.  Fraudulent intent has not been proven because the evidence does not suggest that Gutierrez employed any type of trickery, artifice, or deceit in order to deprive Plaintiffs of their property.  Even if the evidence had established that Gutierrez appropriated funds that RCM was contractually obligated to remit to Plaintiffs, this does not necessarily equate to fraudulent intent.

Plaintiffs have not presented sufficient proof of fraudulent intent by Gutierrez in order to prevail on their non-dischargeability claim premised on embezzlement.

### 11 U.S.C. § 523(a)(6):  Willful and Malicious Injury

Pursuant to § 523(a)(6) of the Bankruptcy Code, a debtor may not be discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  Proof that the debtor committed an intentional act that caused injury is insufficient to prevail on this exception.  <u>Miller</u>, 156 F.3d at 603.  Rather, the creditor must present proof that the debtor acted with actual intent to cause the injury at

23

issue. Id. (citing Kawaauhau v. Geiger, 118 S. Ct. 974, 977 (1998)). Injury is "willful and malicious" where there is either an objective substantial certainty of harm or a subjective motive to cause harm." Shcolnik v. Rapid Settlements, Ltd., No. 10-20800, -- F.3d -- (5th Cir. Feb. 8, 2012) (quoting Miller, 156 F.3d at 606). "[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." Texas v. Walker, 142 F.3d 813, 823 (5th Cir. 1998) (quoting Kawaauhau, 118 S. Ct. at 977). The tort of conversion may or may not entail "willful and malicious" injury, id. at 823-24, especially in Louisiana where the tort of conversion rests upon a finding of fault, not necessarily a finding of intent, In re Dyson, 277 B.R. 84, 88 (Bankr. M.D. La. 2002) (citing Dual Drilling Co. v. Mills Equip. Invests., Inc., 721 So. 2d 853, 857 (La. 1998)).

Plaintiffs cannot prevail on this exception for the same reason that their proof fails in proving a debt under state law.

### C. Plaintiffs' Motion for Adverse Inference

Plaintiffs move the Court to draw an adverse inference related to Gutierrez's failure to retain documents/materials and refusal to testify as to certain matters. The motion is DENIED. The content, probative value, and relevance of anything that might have been on RCM's computers is highly speculative. Gutierrez did not repeatedly invoke his Fifth Amendment rights

during his deposition and the Court is not inclined to penalize
him for validly doing so on the advice of counsel.

Judgment will be entered accordingly.

March 13, 2012

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE